CITY OF WORCESTER *vs.* FRANCIS H. KELLEY & others.

Worcester. Jan. 5. — March 7, 1876. AMES & DEVENS, JJ., absent.

Land was conveyed to a city in trust for the purpose of building a hospital thereon. By the terms of the deed, the city was to make an appropriation of twenty-five thousand dollars for the purpose, and to build a hospital, or part of a hospital, of a certain size, upon the land within three years, or, failing to do so, to pay the grantor, or his legal representative, the sum of two hundred dollars a month; and the land was not to be sold for twenty-five years, and then only upon the opinion of three fourths of the board of trustees that it was unsuitable for a city hospital, and upon the setting apart of a sum of money equal to the value of the land, as then ascertained by three appraisers, as a permanent fund for the city hospital. The city was duly authorized by the Legislature to erect and maintain a city hospital, and accepted the grant of the said land. The grantor by his will, after devising

all the residue of his estate to the city in trust, to be by it applied for the sole use and benefit of the city hospital, provided as follows : "While I would not wish to give any particular direction to the bequest, nor incur the risk of defeating the purpose I have in view in making it, by imposing any limitations or condition as to the manner of its use, still I should prefer to see it set apart as a separate fund, and the income thereof only applied to the support and maintenance of said hospital, if such course shall commend itself to the wisdom of those having it in charge." *Held*, that a bill in equity brought by the city after the death of the grantor and within three years after the grant, seeking to release the city from the obligation of building a hospital upon the land within three years from the date of the deed, and to enable the city to sell the land immediately for its own benefit, on the ground that the city had made other provisions for a suitable and convenient city hospital elsewhere, that it would be inexpedient and unnecessary to erect a hospital on the land, and that said land, on account of its situation, its northern exposure and nature of its soil, was not a suitable, convenient or wholesome place for the erection of a hospital for the reception and care of sick persons, could not be maintained.

BILL IN EQUITY, filed November 24, 1874, by the city of Worcester against the trustees of the Worcester City Hospital, the heirs and executors of George Jaques, and the Attorney General, alleging the following facts :

By the St. of 1871, c. 339, passed May 25, 1871, the city of Worcester was authorized " to erect, establish and maintain a hospital for the reception of persons who, by misfortune or poverty, may require relief during temporary sickness," and the city council of said city was empowered " to make such ordinances, rules and regulations as they may deem expedient, for the appointment of trustees and all other necessary officers, agents and servants for managing the said hospital."

On June 26, 1871, the city council passed an ordinance, which is now in force, establishing a hospital accordingly, and providing for the appointment of a board of trustees for the management of the hospital and of all funds and real and personal property received by the city by gift or bequest for the benefit of the hospital, and afterwards elected a board of trustees under the ordinance. The city established a city hospital for the reception of patients, and the city council made annual appropriations for its support and maintenance.

On March 12, 1872, George Jaques conveyed to the city a parcel of land in Worcester, to be held by the city, its successors and assigns, in trust nevertheless, and for certain charitable uses and purposes set forth in the deed as follows :

" 1. The said parcel of land shall be forever appropriated and used, except as hereinafter otherwise provided, as a site for a public city hospital, to be erected, established and maintained thereon by said city of Worcester in its municipal capacity, in the manner authorized by law.

" 2. The city council of said city shall, on or before the fifteenth day of April next after the date hereof, make an appropriation of not less than twenty-five thousand dollars for the erection on said parcel of land of a hospital building, or of a part of a hospital building; and said building or some part thereof shall, within three years after the date hereof, be so far completed as to afford reasonably comfortable accommodations for at least twenty-five patients of such classes as said city is now authorized by law to receive and care for in its city hospital; and if said hospital building or some part thereof shall not within said three years be so completed and furnished, then the said city shall forfeit and pay to me or to my legal representative, at the expiration of said three years, the sum of two hundred (200) dollars a month from the date hereof, without interest, and shall thereafter continue to pay to me, or to my legal representative, the sum of two hundred (200) dollars a month, without interest, until such accommodations for twenty-five patients shall be furnished as above provided. No hospital building, or part of a hospital building, shall be placed or built on said parcel of land, for twenty-five years from the date hereof, until the plan of such building or part thereof shall have been approved by a vote of said city council, and also by a vote of the board of trustees of the city hospital of said city. And no hospital or building erected upon said parcel of land shall ever, either before or after the expiration of twenty-five years from the date hereof, with the knowledge or consent of said board of trustees or by permission of the city council of said city, be used for the reception of persons sick with diseases dangerous to the public health.

" 3. The city council of said city shall, within two years from the date hereof, by its decree, lay out and widen said Prince Street as a public street, to a width of fifty feet, and lay out the same as near as may be in a straight line parallel with Chandler Street, from King Street to Wellington Street, a distance of about two thousand feet; and said Prince Street shall be so

made as to be in a reasonably good condition for carriages to pass over it from King Street to Wellington Street; said widen·ing of said Prince Street to fifty feet shall be made half on each side or wholly on its southerly side, as said city council shall see fit to lay out the same ; and I hereby grant to said city the right to lay out and maintain said Prince Street over any land now owned by me which shall be comprised within the limits of said street when so laid out and widened; and I hereby further grant to said city the right to cut and fill any portion of said Prince Street for its entire length, from King Street to Wellington Street, as the city council of said city shall determine ; and I request that the name of said Prince Street may be changed to Hospital Street.

" 4. The city council of said city shall within two years from the date hereof, by its decree, lay out and widen said Wellington Street as a public street, to a width of fifty feet from the north-westerly line of Main Street to a point where the northerly line of said Prince Street, as above to be extended, shall intersect with the said Wellington Street, the said Wellington Street to be widened wholly on its southerly side, unless the said city council shall decide to widen it partly on its northerly side. The remaining portion of said Wellington Street shall not be widened on its southerly side without my consent, for a period of ten years from the date hereof, by any order of said city council; but I hereby grant to said city the right to lay out and widen said remaining portion of Wellington Street as a public street, to a width of fifty feet over any land now owned by me adjoining said street, after the expiration of said period of ten years from the date hereof.

" 5. The board of trustees of said city hospital shall have the exclusive care and management of said parcel of land during all the time that said parcel of land shall be occupied for hospital purposes as herein provided ; and my desire is that for the period of twenty-five years from the date hereof, no tree on said parcel of land shall be injured or taken down, except by the consent in writing of three fourths of the members of said board of trustees.

" 6. At any time after the expiration of twenty-five years from the date hereof, if, in the opinion of three fourths of the

members of said board of trustees, said parcel of land shall for any reason be unsuitable for the purposes of a city hospital, then the said city in its corporate capacity may occupy the whole or any part of said parcel of land for school purposes or for other uses, or may sell the whole or any part thereof; provided however, that before the occupation or use of said parcel of land for other purposes than for a city hospital, and before the selling of any part of said parcel of land, the said trustees shall cause said parcel of land, apart from the buildings thereon, to be appraised by three competent men chosen by said trustees, one of said men to be a resident of the city of Boston, in said Commonwealth, and the other two to be residents of said city of Worcester, and thereupon a sum of money equal to the amount of such appraisal shall be immediately set apart and expressly established forever by said city of Worcester, as a permanent fund which shall not be diminished, and the income of said fund shall be forever devoted to the institution now known by the name of the ' Worcester City Hospital,' according to an ordinance entitled ' An ordinance relating to the City Hospital,' passed by the city council of said city June 26, 1871."

The city accepted said deed, and agreed to carry into full effect all its provisions, and to be bound thereby, and the city has in all respects complied with the terms and conditions of said deed, but has not erected, or begun to erect, a hospital building on the land thereby conveyed.

George Jaques died August 24, 1872, leaving a last will dated May 29, 1872, which had been duly proved and letters testamentary issued to the executors named therein. The testator, in and by his said will, after providing for the payment of his debts, funeral expenses and charges of administration, and directing the payment of certain pecuniary legacies, devised and bequeathed all the rest and residue of his property, real and personal, to the city of Worcester, in trust for the use and benefit of said city hospital, said devise and bequest being contained in the eighth and ninth clauses of his will, as follows:

" 8. I have been convinced for some time that the city of Worcester, containing within it as it does so many elements of prosperity, thrift and rapid growth, has no greater want to be supplied than that of a well endowed and properly managed gen

eral hospital which can minister to the comforts of the sick and unfortunate among the poorer classes of the city's population, by furnishing that care, nursing and medical skill which otherwise they never would receive.

" I have already given evidence of my conviction upon this point by the gift recently made to the city for that object, but at the same time I realize how little that alone can do towards the proper and full accomplishment of the work, or even to such a degree as to render it of any permanent and real value to those for whose comfort and well being it is designed.

" In making disposition of the balance of my property, situated as I am, with no relation likely to survive me nearer than cousins with whom I have never been on terms of intimacy, and many of whom are comparative strangers to me, I have thought I could not be the instrument of more good to my fellow men, or serve a better purpose with said balance of my estate, than by contributing still more to the object above named. Therefore,

" 9. All the rest, residue and remainder of my estate, real, personal or mixed, not herein otherwise disposed of, of which I may die seised and possessed, or to which I may in any way be entitled at the time of my decease, whatever the same may be, wherever it may be or be situated, or however it may be known, designated or described, I give, devise and bequeath unto the city of Worcester, in trust, however, to be by the city applied to the sole and particular use and benefit of the institution recently established and known as the Worcester City Hospital, and to no use or purpose other than that whatsoever. While I would not wish to give any particular direction to the bequest nor incur the risk of defeating the purpose I have in view in making it, by imposing any limitations or condition as to the manner of its use, still I should prefer to see it set apart as a separate fund, and the income thereof only applied to the support and maintenance of said hospital, if such course shall commend itself to the wisdom of those having it in charge."

The bill further alleged that a large personal and real estate had vested in and was now held by the city under said will, for the charitable uses and purposes in said will declared; that the city had made other provisions for a suitable and convenient city hospital building; that it would be inexpedient and unnecessary

to erect a hospital building on said land at the present time or within three years from the date of said deed; that said land, on account of its situation, its northern exposure and the nature of its soil, is not a suitable, convenient or wholesome place for the erection of a hospital for the reception and care of sick persons; that other land, more suitable and available for said purpose, can readily be obtained; that the city had already established a city hospital on land which was devised to the city under said will of George Jaques, and which is better adapted to said purposes; that it is necessary and expedient that a sale and conveyance of the land conveyed by said deed should be made, and the proceeds invested for the use and benefit of said hospital; that James Jaques, one of the defendants, had released to said executors all his interest in said estate, and the executors had conveyed the same to the city.

The prayer of the bill was that the city might be relieved from the obligation of building a hospital building on said land within three years from the date of said deed, and that a conveyance of said land and the investment and application of the proceeds for the purposes of said hospital should be decreed, and for other relief.

The executors filed an answer disclaiming all interest in the matters set forth in the bill. The trustees of the city hospital filed an answer admitting the allegations of the bill, and consenting that the prayer of the bill might be granted. The bill was taken for confessed against James Jaques. Sabra Carter, one of the heirs at law of George Jaques, appeared and filed a demurrer, assigning for cause that the plaintiff had not in the bill made or stated such a case as entitled it to any relief whatever.

The case was heard and reserved by *Gray*, C. J., upon the bill and the demurrer, for the consideration and determination of the full court.

*B. F. Thomas*, for Sabra Carter.

*T. L. Nelson*, for the plaintiff.

GRAY, C. J. By the terms of the deed executed by George Jaques and accepted by the city, the city took the land for the purpose of building a hospital thereon; the city was to make an appropriation of twenty-five thousand dollars for the purpose,

and was to build a hospital, or part of a hospital, of a certain size, upon the land, within three years, or, failing to do so, to pay to the grantor or his legal representative the sum of two hundred dollars a month; the land was not to be sold for twenty-five years, and then only upon the opinion of three fourths of the board of trustees that it was unsuitable for a city hospital, and upon the setting apart of a sum of money equal to the value of the land, as then ascertained by three appraisers, as a permanent fund for the benefit of the Worcester City Hospital.

The right to the monthly sum of two hundred dollars, payable by the terms of the deed to the grantor or his legal representative, vested, upon his death, in his executor or administrator. *Cox* v. *Curwen*, 118 Mass. 198. By virtue of the residuary clause in his will, it would pass to the city; yet not as absolute property, but in trust for the benefit of the Worcester City Hospital.

There is nothing in the will, which manifests any intention to vary the provisions of the deed, or to authorize a sale of the land except at the time and under the restrictions therein stated. The donor may well have considered that if a hospital should not be erected on the land granted, the land would increase in value so much during twenty-five years, that his charitable purpose would be best promoted by not selling the land before the expiration of that time. But whatever his reasons were, the terms of his grant, to which the city, by accepting it, assented, are plain. Even if, as the city now alleges, the land is an unsuitable place for a hospital, whatever weight that consideration may have upon the question whether a hospital shall be immediately built there, it has no tendency to show that the alternative undertaking of the city to pay two hundred dollars monthly cannot be carried out.

The object of the present bill is to release the city from the obligation of building a hospital upon the land, and of appropriating twenty-five thousand dollars for that purpose, or, failing so to build, of paying two hundred dollars monthly; and to enable the city to sell the land immediately, in violation of the terms of its contract with the donor, and thus to avail itself of the whole value of the gift, without performing its part of the contract, or paying any of the sums of money which it had bound itself to pay out of its own funds.

The only reasons alleged are that the city has made other pro-visions for a suitable and convenient city hospital elsewhere; that it would be inexpedient and unnecessary to erect a hospital on this land; and that "said land, on account of its situation, its northern exposure and the nature of its soil, is not a suitable, convenient or wholesome place for the erection of a hospital for the reception and care of sick persons."

It does not appear that there are any facts which did not ex-ist or were not known to the city at the time of accepting the deed of the donor, and no case is shown for inducing a court of equity to assist the city in violating its contract with him.

*Bill dismissed.*